# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEREK LAMB on Behalf of Himself and on Behalf of All Others Similarly Situated,**  Plaintiff,  V.  **BRAHAMPUTRA, LLC,**  Defendant. | CIVIL ACTION NO.: 2:20-cv-12145 |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)

Andrew Glenn, Esq.
JAFFEGLENN LAW GROUP, PA
350 Carnegie Center, Suite 150
Princeton, New Jersey 08540
Tel: (201) 687-9977; Fax: (201) 595-0308
aglenn@jaffeglenn.com

Don J. Foty (*Pro Hac Vice*)
William M. Hogg (*Pro Hac Vice*)
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
dfoty@hftrialfirm.com
whogg@hftrialfirm.com

*Counsel for Plaintiff and Collective Members*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................. 1

II. STATEMENT OF FACTS ........................................................................................ 2

   A. The Parties. ........................................................................................................ 2

   B. Defendant uniformly misclassifies workers like Plaintiff as independent contractors, thereby denying them overtime pay. ................................................ 4

III. ARGUMENTS AND AUTHORITIES ..................................................................... 7

   A. Court-authorized notice to potential plaintiffs is fair and efficient, and advances public policy aims. .............................................................................. 7

   B. Plaintiff exceeds his low burden under the FLSA § 216(b). .............................. 8

   C. Plaintiff has made the required showing that other workers are similarly situated and should receive notice. ................................................................... 10

   D. Court-authorized notice is appropriate in this case. ......................................... 12

IV. CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Adami v. Cardo Windows, Inc.*,
   299 F.R.D. 68 (D.N.J. 2014) ................................................................................... 10

*Baker v. Flint Eng'g & Const. Co.*,
   137 F.3d 1436 (10th Cir. 1998) ................................................................................. 7

*Bamgbose v. Delta-T Group, Inc.*,
   684 F. Supp. 2d 660 (E.D. Pa. 2010) ........................................................................ 5

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
   729 F.3d 239 (3d Cir. 2013) .................................................................................. 8, 9

*Cherichetti v. PJ Endicott Co.*,
   906 F. Supp. 2d 312 (D. Del. 2012) .......................................................................... 7

*Chhab v. Darden Restaurants, Inc.*,
   No. 11 Civ. 8345 (NRB), 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ............... 14

*Clark v. Intelenet Am., LLC*,
   No. CV 18-14052, 2020 WL 831127 (D.N.J. Feb. 19, 2020) ................................... 1

*Colosimo v. Flagship Resort Dec. Corp.*,
   No. 17-3969, 2019 U.S. Dist. LEXIS 1349755 (D.N.J. Mar. 26, 2019) ................... 9

*Covachuela v. Jersey Firestop, LLC*,
   No. 20-8806, 2021 WL 1326985 (D.N.J. Apr. 9, 2021) ......................................... 13

*Doe v. Banc, Jack & Joe LLC*,
   No. 17-cv-03843 (KSH) (CLW), 2020 U.S. Dist. LEXIS 95129 (D.N.J. June 1, 2020)............ 1

*Donovan v. DialAmerica Mktg., Inc.*,
   757 F.2d 1376 (3d Cir. 1985)...................................................................................................... 5

*Genesis HealthCare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013) ............................................................................................................ 9, 10

*Halle v. W. Penn. Allegheny Health Sys., Inc.*,
   842 F.3d 215 (3d Cir. 2016)...................................................................................................... 8, 9

*Harris v. Vector Marketing Corp.*,
   716 F. Supp. 2d 836 (N.D. Cal. 2010) ......................................................................................... 5

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*,
   No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012).................................................... 2

*Kim v. Dongbu Tour & Travel, Inc.*,
   No. 2:12-cv-1136 (WHW), 2013 WL 5674395 (D.N.J. Oct. 16, 2013) .................................... 11

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987)...................................................................................................... 8

*Maddy v. GE*,
   59 F. Supp. 3d 675 (D.N.J. 2015) ................................................................................................ 9

*Martin v. Selker Bros., Inc.*,
   949 F.2d 1286 (3d Cir. 1991)....................................................................................................... 5

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) .............................................................................................. 8

*Ornelas v. Hooper Holmes, Inc.*,
   No. 12-cv-3106 (JAP), 2014 WL 7051868 (D.N.J. Dec. 12, 2014) ........................................... 5

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
   27 F. Supp. 3d 567 (D.N.J. 2014) ..................................................................................... 8, 9, 13

*Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   No. 17-8043 (FLW) (TJB), 2018 U.S. Dist. LEXIS 192061 (D.N.J. Nov. 9, 2018)................ 14

*Ritzer v. UBS Fin. Servs., Inc.*,
   No. 2:08-CV-1235 (WJM), 2008 U.S. Dist. LEXIS 71635 (D.N.J. Sept. 22, 2008)................ 13

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*,
   No. 12 Civ. 75, 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013)...................................................... 1

*Sanchez v. Santander Bank, N.A.*,
   No. 17-5775 (PGS)(DEA), 2019 WL 6050738 (D.N.J. Nov. 15, 2019) ............................ 13, 14

*Shakib v. Back Bay Rest. Grp., Inc.*,
   No. 10-cv-4564(DMC)(JAD), 2011 U.S. Dist. LEXIS 124143 (D.N.J. Oct. 26, 2011)........... 10

*Steinberg v. TD Bank, N.A.*,
   No. 10-CV-5600, 2012 U.S. Dist. LEXIS 89086 (D.N.J. June 27, 2012) ............................... 13

*Symczyk v. Genesis Healthcare Corp.*,
   656 F.3d 189 (3d Cir. 2011)....................................................................................................... 10

*Troncone v. Velahos*,
   No. 10-2961 (RBK/AMD), 2011 WL 3236219 (D.N.J. July 28, 2011) ..................................... 5

*Yin Yang v. Vill. Super Mkt., Inc.*,
   No. 18-10486, 2019 WL 1275059 (D.N.J. Mar. 20, 2019) ....................................................... 10

*Zavala v. Wal-Mart Stores, Inc.*,
   691 F.3d 527 (3d Cir. 2012).................................................................................................... 8, 9

**Statutes**

29 C.F.R. § 516 ............................................................................................................ 4
29 U.S.C. § 201 ............................................................................................. 1, 7, 8, 14
29 U.S.C. § 207 ............................................................................................................ 8
29 U.S.C. § 216 .................................................................................................. 1, 2, 8

**I.     PRELIMINARY STATEMENT**

Plaintiff Derek Lamb ("Plaintiff") initiated this action to rectify Defendant BrahamPutra LLC's ("Defendant") practice of misclassifying workers such as integrators as "independent contractors" and depriving those workers of overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

Through this Motion, Plaintiff seeks to take the first step in protecting the rights of other current and former integrators (and other workers with similar job duties as integrators) who were likewise misclassified as independent contractors and were denied overtime wages when they worked more than 40 hours per week. Specifically, Plaintiff requests Court-authorized notice be sent to the following class of workers:

> **All current and former integrators and all workers in substantially similar positions classified as independent contractors by Defendant at any time from September 1, 2017 through the present.**

Plaintiff respectfully moves pursuant to 29 U.S.C. § 216(b) for conditional certification of a collective action, and for approval of Plaintiff's proposed notices and consent form, and Court-approved issuance of the notice to the putative collective members in the manner described below.

Plaintiff exceeds the minimal and lenient threshold required to prevail on this Motion. *See Clark v. Intelenet Am., LLC*, No. CV 18-14052, 2020 WL 831127, at *2 (D.N.J. Feb. 19, 2020) ("Courts apply a fairly lenient standard in deciding whether a plaintiff has made the requisite modest factual showing for conditional certification") (internal citation and quotation marks omitted); *Doe v. Banc, Jack & Joe LLC*, No. 17-cv-03843 (KSH) (CLW), 2020 U.S. Dist. LEXIS 95129, at *16 (D.N.J. June 1, 2020) (noting that courts have approved conditional certification "even where there was only one plaintiff") (citations omitted); *see also Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75, 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (conditional

certification burden met with pleadings and one affidavit from a named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (conditional certification burden met with single declaration from named plaintiff). Through Plaintiff's sworn declaration, as well as the declaration of Opt-in Plaintiff Eric Parkes, the documentary evidence provided herein, and the well-pled allegations in the Complaint, Plaintiff demonstrates that Defendant engaged in unlawful conduct in misclassifying these workers as "contractors" and denying them their rightly-earned overtime compensation, and that other similarly situated workers exist and will benefit from Court-authorized notice pursuant to the FLSA § 216(b).

## II. STATEMENT OF FACTS

### A. The Parties.

Defendant provides staffing services in the IT and telecommunications industries, and provides such staffing services throughout the United States.[1] In order to provide those staffing services, Defendant hires "integrators" across the country.[2] Integrators travel to various cellular sites to replace and install equipment in cellular towers/sites, where they perform upgrade and repair work to ensure that cell towers can send wireless signals for up-and-coming cellular phones (*e.g.*, upgrading cell towers from 3G to 4G, or from 4G to 5G).[3]

Plaintiff worked as an integrator for Defendant from approximately December 2018 to March 2019 in the St. Louis, Missouri area.[4] Opt-in Plaintiff Parkes worked as an integrator for Defendant from approximately January 2019 to March 2019 in Iowa and the Cleveland, Ohio

---

[1] *See* Dkt. 13 at ¶ 13; Dkt. 24 at ¶ 13 ("BP admits . . . that it provides Staffing Services to clients[.]").
[2] *See* Dkt. 13 at ¶ 14.
[3] *Id.* at ¶¶ 15-16; Declaration of Derek Lamb at ¶ 4; Declaration of Eric Parkes at ¶ 4.
[4] *Id.* at ¶ 20; Lamb Decl. at ¶ 3.

area.[5] Integrators work outdoors and perform various manual labor tasks as part of their regular duties.[6] Using basic hand tools such as cable cutters, screwdrivers, ladders, pliers, wrenches, colored tape, cameras, and zip ties, integrators install wiring, equipment, and physically connect equipment at the cellular towers.[7] Integrators are also required to wear safety equipment such as hard hats, safety shoes, safety glasses, and have a first aid kit on hand.[8]

In addition to the labor tasks, integrators also service these cell towers by uploading pre-written scripts and computer programs into the equipment at the cell towers.[9] The integrators are provided these programs ahead of time, and do not write computer code, design computer networks, create computer hardware/software, and do not have any programming education or experience.[10]

Integrators work long hours performing this work. For instance, Plaintiff typically worked five days per week, and on average worked 12 hours per day.[11] Other integrators worked similarly long or longer hours, frequently working in excess of 40 hours per week.[12] Integrators are paid on a day rate basis, meaning they are paid a set amount for each day worked regardless of the number of hours worked.[13] Defendant does not pay overtime wages to the integrators.[14]

---

[5] *See* Parkes Decl. at ¶ 3.
[6] *See* Dkt. 13 at ¶ 16; Lamb Decl. at ¶ 4; Parkes Decl. at ¶ 4.
[7] *Id.* at ¶¶ 16-17; Lamb Decl. at ¶ 4; Parkes Decl. at ¶ 4.
[8] *Id.* at ¶ 17; Lamb Decl. at ¶ 4; Parkes Decl. at ¶ 4.
[9] *Id.* at ¶ 19; Lamb Decl. at ¶ 5; Parkes Decl. at ¶ 5.
[10] *Id.*; Lamb Decl. at ¶ 5; Parkes Decl. at ¶ 5.
[11] *Id.* at ¶ 21; Lamb Decl. at ¶ 7.
[12] *Id.* at ¶ 21; Parkes Decl. at ¶ 7 ("On average, I would work approximately 90 hours per week.")
[13] *See* Dkt. 13 at ¶¶ 32, 35; Lamb Decl. at ¶¶ 8, 11; Parkes Decl. at ¶¶ 8, 11.
[14] *Id.* at ¶ 33; Lamb Decl. at ¶ 8.

### B. Defendant uniformly misclassifies workers like Plaintiff as independent contractors, thereby denying them overtime pay.

Plaintiff and the class of workers he seeks to represent worked as integrators for Defendant, as well as those in similar positions.[15] In hiring Plaintiff and the other integrators, Defendant sent formal "offer letters" that specifically inform the workers they are being hired as "employees" rather than as "independent contractors."[16] Those offer letters state, in relevant part:

> This Letter is our formal offer of employment and requires your written acceptance. . . . The specific terms of your employment are listed on attached "Additional Terms and Conditions along with Employment Agreement." . . . Your employment is "at-will" basis. Therefore, you may terminate your employment anything with two weeks of required written notice to BrahamPutra, and BrahamPutra may terminate or alter the conditions of your employment at any time, for any reason. Also your employment with BrahamPutra is contingent upon NSN SOW & their satisfaction of your performance. General terms of your employment are described in the BrahamPutra Employee Handbook, as revised from time to time. BrahamPutra expect that you will read and abide by all the guidelines set forth in the employee handbook, Employment agreement, plus any other policies and practices adopted by BrahamPutra from time to time.[17]

Despite this clear language demonstrating that integrators are employees, Defendant nevertheless uniformly treats integrators as "independent contractors"—meaning that Defendant does not pay these workers any overtime wages, does not withhold payroll taxes, and otherwise attempts to avoid the customary obligations normally borne by employers such as employee benefits, as well as maintaining standard employment records pursuant to 29 C.F.R. § 516, *et seq*.[18] Indeed, when integrators are required to work overtime and receive approval to work overtime from Defendant's end clients, the integrators are required to inform Defendant so that Defendant

---

[15] *See* Dkt. 13 at ¶ 20; Lamb Decl. at ¶ 3; Parkes Decl. at ¶ 3.
[16] *Id.* at ¶ 28; Dkt. 24 at ¶ 28; Lamb Decl. at ¶¶ 9-12 and Exhibit 1 to Declaration ("Lamb Offer Letter"); Parkes Decl. at ¶¶ 9-12 and Exhibit 1 to Declaration ("Parkes Offer Letter").
[17] *See* Lamb Offer Letter at p. 1; *see also* Parkes Offer Letter at p. 1 (same).
[18] *See* Dkt. 13 at ¶ 31; Dkt. 24 at ¶ 31; Lamb Decl. at ¶¶ 8-12; Parkes Decl. at ¶¶ 8-12.

-4-

can bill the end client for that "overtime," even though the integrators do not get paid any of the overtime wages received for such work.[19] In other words, Defendant gets paid for the overtime wages earned by Plaintiff and Class Members, but does not furnish any of that additional pay to the integrators themselves.[20]

The economic reality of the relationship between the integrators and Defendant indicates an employment relationship,[21] rather than a relationship where the integrators are "contractors" who are in business for themselves. While it is premature to make a determination as to whether these workers were employees or independent contractors at this stage of the proceedings, *Ornelas v. Hooper Holmes, Inc.*, No. 12-cv-3106 (JAP), 2014 WL 7051868, at *8 (D.N.J. Dec. 12, 2014); *Troncone v. Velahos*, No. 10-2961 (RBK/AMD), 2011 WL 3236219, at *4 (D.N.J. July 28, 2011); *see also Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 836 (N.D. Cal. 2010) (conditionally certifying collective action arising from allegation of independent contractor misclassification, where plaintiffs were similarly situated as to job title, noting it would be premature to make a determination as to whether plaintiffs were independent contractors or employees at the first stage of the two-step inquiry), the record before the Court indicates that these workers are similarly situated for purposes of conditionally certifying the collective action and sending notice.

To begin, Plaintiff and the other integrators are subject to a high level of control by Defendant. As the offer letter that Defendant sends to integrators makes clear, Plaintiff and the other integrators are required to abide by Defendant's rules, policies, employee handbooks, "plus any other policies and practices adopted by BrahamPutra from time to time."[22] The workers subject

---

[19] *See* Lamb Decl. at ¶ 12; Parkes Decl. at ¶ 12.
[20] *Id.*
[21] In the Third Circuit, courts look to a six-factor "economic reality" test to determine whether a worker is an employee. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991); *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382-83 (3d Cir. 1985); *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010).
[22] *See* Lamb Offer Letter at p. 1; Parkes Offer Letter at p. 1.

to these terms confirm that Defendant supervised their activities—Defendant oversaw their work to make sure the end client was happy with their performance and would give the workers instructions to meet that end.[23] As a matter of economic reality, Plaintiff and the integrators are dependent upon Defendant to render their services.[24]

Moreover, Plaintiff and other integrators are paid on a day rate or hourly-rate basis.[25] As such, they had no opportunity to increase their compensation through any kind of business acumen or managerial skill.[26] The only way Plaintiff and the other integrators could increase their pay was to work more shifts or additional hours.[27]

Plaintiff and the other integrators invested minimal amounts in their equipment required for their work, and did not employ any helpers or employees to assist them in their work.[28] Plaintiff's and the other integrators' investment were dwarfed by Defendant's investment in the business infrastructure.[29]

While integrators' work requires some level of skill, Plaintiff and the integrators are not allowed to use their discretion and independent judgment in executing that skill.[30] Instead, they are required to follow the instructions, guidelines, and strictures of Defendant and its end-client in performing their jobs—*e.g.*, they are required to upload pre-written scripts and programs into the end client's equipment, and are provided such programs ahead of time.[31]

---

[23] *See* Dkt. 13 at ¶ 51; Lamb Decl. at ¶ 14; Parkes Decl. at ¶ 14.
[24] *See* Lamb Decl. at ¶ 17; Parkes Decl. at ¶ 17.
[25] *See* Dkt. 13 at ¶ 32; Lamb Decl. at ¶ 11; Parkes Decl. at ¶ 11.
[26] *See* Lamb Decl. at ¶ 17; Parkes Decl. at ¶ 17.
[27] *Id.*
[28] *See* Lamb Decl. at ¶¶ 15-16; Parkes Decl. at ¶¶ 15-16.
[29] *See* Lamb Decl. at ¶¶ 15-16; Parkes Decl. at ¶¶ 15-16.
[30] *See* Lamb Decl. at ¶¶ 4-5; Parkes Decl. at ¶¶ 4-5.
[31] *Id.*

Plaintiff worked for Defendant for a three-month period.[32] Other integrators worked similar lengths of time for Defendant.[33] However, this is due to the natural characteristics in the industry where integrators are hired for specific periods, until the completion of a given project, and not due to the independent choice usually exhibited by one who intentionally chooses to be in business for oneself.[34] *See, e.g., Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998); *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312, 318 (D. Del. 2012).

Defendant provides staffing services to its customers in the IT and telecommunications field.[35] Plaintiff and the integrators that Defendant hires are essentially the "product" that Defendant sells to its customers.[36] The services rendered by Plaintiff and the integrators are essential and integral to Defendant's business—without the integrators, Defendant would have had no "product" to sell to its customers.[37]

Despite the weight of these factors indicating that integrators are employees rather than contractors, Defendant promulgated a uniform policy and plan to improperly classify integrators and other workers with similar job duties as "independent contractors" and deprive them of overtime pay under the FLSA.[38]

### III.  ARGUMENTS AND AUTHORITIES

####   A.  Court-authorized notice to potential plaintiffs is fair and efficient, and advances public policy aims.

Under the FLSA, employees must be paid overtime compensation at one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. §

---

[32] *See* Dkt. 13 at ¶ 20; Lamb Decl. at ¶ 3.
[33] *See* Parkes Decl. at ¶ 3
[34] *See* Lamb Decl. at ¶ 3; Parkes Decl. at ¶ 3.
[35] *See* Dkt. 13 at ¶ 13; Lamb Decl. at ¶ 6; Parkes Decl. at ¶ 6.
[36] *See* Lamb Decl. at ¶ 6; Parkes Decl. at ¶ 6.
[37] *Id.*
[38] *See* Lamb Decl. at ¶¶ 8-12; Parkes Decl. at ¶¶ 8-12.

207(a). The FLSA authorizes aggrieved employees to bring a collective action for unpaid overtime wages "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). This provision allows a group of employees to proceed in a collective action, instead of just their individual capacities, thereby enabling them to pool their resources in order to vindicate their rights in a more-efficient and cost effective manner. *See Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000). Allowing FLSA suits to proceed as collective actions furthers the goals of judicial economy and enables the efficient resolution of like claims in one proceeding. *Id.*

Once a court conditionally certifies a collective action, it has the discretion to provide court-facilitated notice. *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 573 (D.N.J. 2014). Such notice ensures the workers receive accurate and timely information concerning the pendency of the collective action, which enables them to make informed decision about whether to participate, and "serves the legitimate goal of avoiding a multiplicity or duplicative suits and setting cut off dates to expedite the disposition of the action." *Id.*

**B.   Plaintiff exceeds his low burden under the FLSA § 216(b).**

In determining whether to conditionally certify a collective action, courts in this Circuit follow a two-step inquiry: (1) a notice and conditional certification stage, followed by (2) a final certification or decertification stage. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citing *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 535 (3d Cir. 2012); *Morisky*, 111 F. Supp. 2d at 497; *see also, e.g., Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987).

"The first step, so-called conditional certification, requires a named plaintiff to make a modest factual showing—something beyond mere speculation—to demonstrate a factual nexus

between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (internal citations omitted). "If the plaintiffs have satisfied their burden, the court will conditionally certify the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243 (internal citations omitted). "**The sole consequence of conditional certification is the sending of court-approved written notice to employees**, who in turn become parties to a collective action only by filing written consent with the court." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (emphasis added, internal quotations omitted).

At this stage, the Court requires only a "modest factual showing" to determine whether potential collective members are similarly situated. *Id.*; *Colosimo v. Flagship Resort Dec. Corp.*, No. 17-3969, 2019 U.S. Dist. LEXIS 1349755, at *2 (D.N.J. Mar. 26, 2019) ("This analysis occurs early in the litigation when the court only has minimal evidence; thus, the analysis uses a fairly lenient standard and usually results in the grant of conditional certification.").

To show that the plaintiff and other workers are similarly situated, the plaintiff need not show that his position is identical to the position of the other putative collective members. *Pearsall-Dineen*, 27 F. Supp. 3d at 570. Relevant factors pertinent to this inquiry include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Maddy v. GE*, 59 F. Supp. 3d 675, 682 (D.N.J. 2015) (citing *Zavala*, 691 F.3d at 536-37).

Plaintiff has demonstrated that he and the workers he seeks to represent are advancing similar claims: they are uniformly classified as independent contractors, are not paid overtime wages, and have similar circumstances of employment.

The overall merits of Plaintiff's claims need not be (and should not be) evaluated and discovery need not be completed in order for notice to be granted and disseminated. *See Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-cv-4564(DMC)(JAD), 2011 U.S. Dist. LEXIS 124143, at *6 (D.N.J. Oct. 26, 2011); *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 80 (D.N.J. 2014) ("Because a full evaluation of the merits is not appropriate at this [conditional certification] stage, it is sufficient that Plaintiffs share similar job duties and share a similar business relationship with Defendants."). Accordingly, in applying this fairly lenient standard, the Court's determination as to whether potential collective action members are similarly situated typically results in granting conditional certification. *Id.*

Plaintiffs need only "produce some evidence, 'beyond mere speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [Plaintiff] and the manner in which it affected other employees." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (citations omitted), *rev'd on other grounds*, *Symczyk*, 133 S. Ct. 1523 (2013); *see also Yin Yang v. Vill. Super Mkt., Inc.*, No. 18-10486, 2019 WL 1275059, at *3-4 (D.N.J. Mar. 20, 2019) (concluding that the plaintiff's declaration and an additional employee's declaration provided sufficient evidence to conditionally certify a collective action).

**C. Plaintiff has made the required showing that other workers are similarly situated and should receive notice.**

Here, Plaintiff has met his minimal, initial-stage burden. Plaintiff makes a strong preliminary showing, through the well-pled Complaint, sworn declarations, and other documentary evidence presented, that Defendant has uniformly subjected Plaintiff and other

similar workers to the same unlawful misclassification policy. Plaintiff's Complaint expressly alleges that Plaintiff is a member of a "similarly situated" group of workers: "All current and former integrators and all workers in substantially similar positions classified as independent contractors by Defendant [during the relevant time period]." *See* Dkt. 13 at ¶ 82. Specifically, Plaintiff seeks to conditionally certify a class of integrators or other workers who perform similar job duties as integrators, who were classified as contractors instead of employees at any time from the three-year period preceding the filing of the Original Complaint through final resolution of this action. The total number and identities of these workers who have not yet opted-in to the action are readily available from Defendant's records.

As part of a regular business practice, Defendant has intentionally, willfully, and repeatedly harmed Plaintiff and the putative collective members by misclassifying these workers as "contractors," requiring them to regularly work in excess of 40 hours in a workweek without overtime pay for such hours. *See* Dkt. 13 at ¶¶ 65-75. Taken together, the allegations in the well-pled Complaint and the facts set forth in Plaintiff's supporting declarations are more than enough to satisfy the lenient standard applied in the first stage conditional certification inquiry.

For example, in *Kim v. Dongbu Tour & Travel, Inc.*, No. 2:12-cv-1136 (WHW), 2013 WL 5674395 (D.N.J. Oct. 16, 2013), Judge Walls conditionally certified a class of workers who presented sworn testimony, manuals, certifications and copies of contractual agreements as evidence demonstrating that plaintiffs and the proposed class were subject to the same employment practice of being classified as "independent contractors." *Id.* at *3.

Here, the record is abundantly clear that the integrators hired by Defendant are expressly informed in their offer letters that they are "employees" rather than "contractors," that their employment is "at-will," and that the "[g]eneral terms of [their] employment are described in the

BrahamPutra Employee Handbook[.]"[39] In other words, documentary evidence substantiates that these workers were misclassified as "independent contractors," especially where "BrahamPutra expect[s] that [they] will read and abide by all the guidelines set forth in the employee handbook, Employment agreement, plus any other policies and practices adopted by BrahamPutra from time to time."[40]

In addition to this documentary evidence, Plaintiff and Opt-in Plaintiff Parkes have provided sworn testimony substantiating and corroborating Plaintiff's claim that Defendant uniformly misclassified integrators and other workers with similar job duties as "independent contractors."[41] That is all that is required at this stage for Plaintiff to meet his lenient burden. Accordingly, the Court should find the members of the proposed collective are similarly situated, authorize notice to be facilitated to the prospective collective members in the proposed form attached herein.

### D. Court-authorized notice is appropriate in this case.

In combination with an order conditionally certifying this collective action, Plaintiff also respectfully requests the Court to authorize notice to be dissemination to the class of workers at issue in this case: integrators and other workers with similar job duties as integrators who were classified as independent contractors by Defendant from September 1, 2017 through the present.[42]

District courts have the authority to permit and supervise the notice process, including how much the time recipients are given to opt-in to the case after notice is delivered, how the recipients

---

[39] *See* Lamb Offer Letter at p. 1 ("This Letter is our formal offer of employment and requires your written acceptance. . . . The specific terms of your employment are listed on attached 'Additional Terms and Conditions along with Employment Agreement.' . . . Your employment is 'at-will' basis. . . . General terms of your employment are described in the BrahamPutra Employee Handbook, as revised from time to time."); Parkes Offer Letter at p. 1 (same).
[40] *Id.*
[41] *See* Lamb Decl.; Parkes Decl.
[42] Plaintiff anticipates submitting a separate motion for equitable tolling of the FLSA claims for the putative collective members, and incorporates that motion as if fully set forth herein where applicable.

are to be notified, and what contact information is provided to plaintiffs to facilitate notice. *See Pearsall-Dineen*, 27 F. Supp. 3d at 574 ("[D]istrict courts may regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules." (internal quotation marks omitted); *Ritzer v. UBS Fin. Servs., Inc.*, No. 2:08-CV-1235 (WJM), 2008 U.S. Dist. LEXIS 71635, at *9 (D.N.J. Sept. 22, 2008) ("[C]ourts possess broad discretion to provide court-facilitated notice," authorize the specific wording of an entire notice provision, and determine an appropriate means of notice).

Courts have found that opt-in periods of between 30-to-60 days are generally reasonable and acceptable. *See Covachuela v. Jersey Firestop, LLC*, No. 20-8806, 2021 WL 1326985 (D.N.J. Apr. 9, 2021) (citing *Sanchez v. Santander Bank, N.A.*, No. 17-5775 (PGS)(DEA), 2019 WL 6050738, at *4 (D.N.J. Nov. 15, 2019) ("[Sixty days] is sufficient time to provide each potential collective action member the opportunity to make an informed decision about whether to opt into this action, while not needlessly delaying resolution of the litigation.")); *Steinberg v. TD Bank, N.A.*, No. 10-CV-5600, 2012 U.S. Dist. LEXIS 89086, at *17 (D.N.J. June 27, 2012). In the event the Court grants conditional certification, Plaintiff would request an opt-in period of 60 days, with a reminder postcard to be sent at the half-way point for those who have not already joined the case.

In addition to sending the Court-authorized notice to similarly situated workers by regular mail, Plaintiff requests permission to send the notice via email and text message. Attached as **Exhibit A** is the proposed notice to be sent by mail, attached as **Exhibit B** is the proposed email notice, attached as **Exhibit C** is the proposed text notice, and attached as **Exhibit D** is the proposed "consent to join" form. While first class mail can be expected to arrive in most instances, it does not always do so. Mail is occasionally mis-delivered, misplaced, taken from mailboxes, or left unopened, particularly when it is sent from unrecognized sources. Of greater relevance here,

Defendant may not have up-to-date or accurate mailing addresses for their former workers, as addresses regularly change. Consequently the best notice practicable in these circumstances would include sending notice by email and/or text message to ensure the potential collective members actually receive the notice and a chance to learn about this Action.

Attached as **Exhibit E** is Plaintiff's proposed reminder postcard. By notifying potential plaintiffs that their right to join this lawsuit is limited, the reminder postcard further promotes the FLSA's broad remedial purpose, as well as the goal of Court-authorized notice by promoting efficient case management through notification and joinder of claims. *Sanchez*, 2019 WL 6050738, at *3 ("[T]he Court will permit Plaintiff to both mail and email an initial notice. The Court will also permit a reminder notice to be sent by mail and email halfway through the notice period."); *Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 17-8043 (FLW) (TJB), 2018 U.S. Dist. LEXIS 192061, at *14 (D.N.J. Nov. 9, 2018) (permitting reminder notice to be sent by mail and email halfway through the notice period); *see also Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (noting that a reminder postcard serves the purpose "to inform as many potential plaintiffs as possible of the collective action and their right to opt-in.").

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court grant this Motion in its entirety, conditionally certify this FLSA lawsuit as a collective action for purposes of sending court-authorized notice to the putative collective members, and approve Plaintiff's proposed notices, consent form, and reminder notice. Plaintiff further requests any such relief to which he may be entitled at law or in equity.

Dated: March 18, 2022 Respectfully submitted,

*/s/ Andrew Glenn*
Andrew Glenn, Esq.
JAFFEGLENN LAW GROUP, PA
350 Carnegie Center, Suite 150
Princeton, New Jersey 08540
Tel: (201) 687-9977; Fax: (201) 595-0308
aglenn@jaffeglenn.com

*/s/ William M. Hogg*
Don J. Foty (*Pro Hac Vice*)
William M. Hogg (*Pro Hac Vice*)
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
dfoty@hftrialfirm.com
whogg@hftrialfirm.com

*Counsel for Plaintiff and Collective Members*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Andrew Glenn*
Andrew Glenn